FILED
2010 May-04  PM 03:53
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

ANGELIA MICHELLE JELKS,

     PLAINTIFF,

VS.                                                    CASE NO.: CV-09-J-2153-M

MICHAEL ASTRUE,
Commissioner of Social Security,

     DEFENDANT.

## MEMORANDUM OPINION

This matter is before the court on the record and the briefs of the parties. This Court has jurisdiction pursuant to 42 U.S.C. § 405. The plaintiff is seeking reversal and/or remand of a final decision of the Commissioner. All administrative remedies have been exhausted.

## Procedural Background

The plaintiff applied for Disability Insurance Benefits and Supplemental Security Income due to congestive heart failure, anemia, and arm and leg swelling (R. 179). She was found to suffer from hypertensive cardiomyopathy with congestive heart failure and morbid obesity (R. 103). Upon conclusion of the first hearing, held April 2, 2008, the Administrative Law Judge ("ALJ") announced that he wanted to obtain testimony from a medical expert (R. 56). A second hearing was held August 5, 2008, at which a medical expert and a vocational expert both testified (R. 58-88).

Thereafter, on November 12, 2008, the ALJ held a third hearing, with testimony from an additional vocational expert (R. 89-102).  Subsequent to the third hearing, the ALJ rendered an opinion finding that the plaintiff was not under a disability at any time through the date of his decision  (R. 13-16).

The plaintiff argues that the ALJ failed to articulate good cause for according less weight to the opinion of plaintiff's treating physician.  Plaintiff's memorandum at 6.  For the reasons set forth herein, this case is **AFFIRMED**.

### Factual Background

The plaintiff was 39 years old at the time of each of the three hearings, having been born January 24, 1969 (R. 37).  She completed the twelfth grade (R. 37).  The plaintiff was fired in 2005 from one job and thereafter had two unsuccessful work attempts through an employment agency (R. 50-51).  She testified that she is unable to work due to problems with her legs, back, breathing and walking (R. 38).  Her legs swell, causing her problems with standing and walking (R. 38, 43).  She spends most of her day laying around, propped up on pillows (R. 44). The plaintiff testified that since she was hospitalized for congestive heart failure in 2006, she has not been able to work (R. 51-52).

During the first hearing, the ALJ opined that he needed further evidence concerning the plaintiff's diagnosis of anemia, because that could make her tired and unable to work, and also because he wanted evidence concerning the degree to which

congestive heart failure was incapacitating (R. 54, 56).  At the second hearing, the medical expert ("ME") testified that the plaintiff's most severe impairment was morbid obesity, followed by hypertension and a one-time episode of congestive heart failure (R. 64-66).  The ME testified that none of the plaintiff's impairments met or equaled a listed impairment (R. 67).  He further testified that the plaintiff's blood pressure varies according to whether the plaintiff is taking medication as prescribed (R.76).  The ME stated that if the plaintiff took medication regularly, her blood pressure would be controlled (R. 76).  The ME also testified that, in his opinion, someone with the degree of morbid obesity of the plaintiff could perform sedentary work activity (R. 79).

Also at the second hearing, a vocational expert ("VE") testified that the plaintiff's previous relevant work was all unskilled and ranged from sedentary to medium levels (R. 83-84).  When asked whether a person with a similar vocational background, with a high school education, who was limited to lifting no more than ten pounds occasionally, could sit up to six hours in an eight hour day, and stand up to two hours in an eight hour day, with further limitations against climbing , stooping, crouching, and crawling, but without  any manipulative limitations, could perform substantial gainful employment, the VE responded that such a person could perform the plaintiff's past relevant work as an assembler (R. 84-86).  Other sedentary jobs meeting these limitations also exist in the national economy in significant numbers

(R. 86-87).   The VE further testified that if such a person had to lie down approximately half of the day, then no substantial gainful employment could be performed (R. 88).

At the third hearing, the ALJ asked another VE whether a person with the same limitations established at the second hearing could perform any of the plaintiff's past relevant work (R. 96-97).  That VE testified such limitations were within plaintiff's previous job as an assembler, and that other sedentary jobs also met those limitations (R. 97-98).  Similarly, the VE testified that if the plaintiff had to lie down half the day due to various ailments, all substantial gainful employment would be precluded (R. 99-100).

The plaintiff's medical records establish one hospital admission on January 18, 2006, due to congestive heart failure secondary to anemia (R. 246).  These records also reflect diagnoses of hypertensive cardiomyopathy, morbid obesity, allergic rhinitis, severe anemia possibly due to iron deficiency, and tobacco abuse (R. 246, 260, 262-263, 269-271).  A note reflects that the plaintiff had not been taking medications for several months (R. 270).  A follow-up visit with Dr. Bruce Head reflects cardiomyopathy with a left ventricle ejection fraction of 45% and left ventricular hypertrophy (R. 265).  Dr. Head opined the plaintiff's blood pressure could be better controlled with different medication and advised the plaintiff to continue taking Lasix (R. 265).

The plaintiff was sent for a consultative medical examination in April 2006 (R. 272).   The plaintiff reported that she could not work due to an enlarged heart, swelling in her legs, shortness of breath, fatigue, and an inability to stand for long periods of time (R. 272).  Dr. Alvin V. Tenchavez opined that the plaintiff suffered from congestive heart failure secondary to anemia, hypertensive cardiomyopathy, morbid obesity, iron deficiency anemia, and a left ventricular ejection fraction of 45% (R. 274).  Upon examination, he noted the plaintiff was able to heel toe walk, stoop and rise, make a fist, and manipulate small objects (R. 274).  He offered no opinion as to plaintiff's ability to engage in substantial gainful employment.

In July 2007 Dr. Judith Quilon completed paperwork for the plaintiff to be eligible for food stamps and Medicaid.  In those documents, Dr. Quilon stated that the plaintiff was not able to work due to cardiomyopathy and congestive heart failure, that the plaintiff had these conditions since January 2006, and that she believed these conditions to be permanent (R. 305).  Dr. Quilon further noted that the plaintiff was unable to attend a classroom training program (R. 306).

The ALJ found the plaintiff to suffer from the severe impairments of congestive heart failure and morbid obesity, but that these conditions did not meet or equal any of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (R. 14).  The ALJ further found the plaintiff able to engage in sedentary work activity, based primarily on the testimony of the medical expert at the second hearing (R. 15).  The

ALJ rejected the opinion of Dr. Quilon as reflected on the plaintiff's food stamp application because it was unsupported by evidence that the plaintiff was so precluded (R. 16).  Based on the limitations found by the ALJ, he concluded that the plaintiff could return to her past relevant work as an assembler (R. 16).

## Standard of Review

The initial burden of establishing disability is on the claimant, who must prove that due to a mental or physical impairment he or she is unable to perform previous work.  If the claimant is successful, the burden shifts to the Commissioner to prove that the claimant can perform some other type of work existing in the national economy.  *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir.1987).

This court's review of the factual findings in disability cases is limited to determining whether the record contains substantial evidence to support the ALJ's findings and whether the  correct legal standards were applied.  42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420 (1971); *Wolfe v. Chater*, 86 F.3d 1072, 1076 (11th Cir.1996); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir.1990).   "Substantial evidence" is defined as "such relevant evidence as a reasonable mind would accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206 (1938)); *Miles v. Chater*, 84 F.3d 1397 (11th Cir.1996); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir.1983).

This court must also be satisfied that the decision of the Commissioner is grounded in the proper application of the appropriate legal standards. *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988); *Bridges v. Bowen,* 815 F.2d 622, 624 (11th Cir.1987); *Davis v. Shalala*, 985 F.2d 528 (11th Cir.1993). The Commissioner's factual findings are conclusive if supported by substantial evidence. In contrast, the Commissioner's conclusions of law are not presumed valid. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir.1991). Furthermore, the Commissioner's "failure to ... provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Cornelius*, 936 F.2d at 1145-1146.

## Legal Analysis

This court concludes that the ALJ's finding that the plaintiff can perform her past relevant work is supported by substantial evidence. The sparse medical records in evidence at the time the ALJ rendered his decision do not support a conclusion that the plaintiff is unable to engage in substantial gainful employment. While Dr. Quilon so stated on a Food Stamp application, the same is not supported by the plaintiff's medical records or any objective medical evidence.

The plaintiff asserts that the ALJ erred in rejecting the opinion of Dr. Quilon without good cause. Plaintiff's brief, at 6. Although the Commissioner responds that the  record is unclear as to whether Dr. Quilon is actually a treating physician,

Commissioner's brief, at 5, the court finds sufficient evidence to establish that Dr. Quilon has an ongoing treatment relationship with the plaintiff.[1]  However, even assuming that the illegible signature on the majority of the treatment records from Quality of Life Health Services is that of Dr. Quilon, the court finds nothing in these medical records which provides evidence that the plaintiff is unable to perform sedentary work as set forth by the ALJ.

The legible portions of those medical records post-dating the plaintiff's alleged onset date show as follows:

On May 31, 2006, the plaintiff complained of a runny nose and cramping type pain (R. 288).  She was noted to have +1 edema (R. 288).  Her blood pressure was noted to be uncontrolled and was 179/101 at the time (R. 288-289).  In December 2006, the plaintiff was not taking her medications regularly (R. 286).  She denied having any pain and "edema" was marked as negative (R. 286).  In July 2007 the plaintiff complained of lower back pain and bilateral leg pain (R. 284).  Edema was noted and her blood pressure was 198/112 (R. 284). She was told to come back for a follow up appointment in three weeks (R. 285).  The plaintiff's November 2007 record reflects that she did not keep her appointment scheduled three months prior

---

[1]Because the Quality of Life records reflect that the food stamp and unemployment applications were completed by them, the logical inference is that Dr. Quilon in fact was present at Quality of Life to do so, even though the medical record itself was signed by Carol James, CRNP (R. 289)

and that she was complaining of shortness of breath ongoing for the past two weeks
(R.308). Her blood pressure was 132/70 (R. 308). The plaintiff denied any allegation
of pain at a December 2007 visit (R. 307).

The plaintiff was next seen on July 1, 2008, at which time her record reflects
that the plaintiff had not been seen in six months (R. 318). She reported periods of
weakness and a fast heart rate (R. 318). On July 15, 2008, the plaintiff again denied
any pain (R. 316). At that time, her blood pressure was high, but her only diagnoses
were hypertension and anemia (R. 316-317). On August 1, 2008, the plaintiff voiced
no complaints, denied any pain, and a notation states "papers filled out" (R. 314).
Her blood pressure was noted to be improved (R. 314). The record reflects that the
plaintiff was told to decrease her fat intake and that she remained anemic with low
iron levels (R. 315).

Medical records submitted for the first time to the Appeals Council reflect that
the plaintiff returned to Quality of Life on November 18, 2008, to have "application
filled out" (R. 321). That record states "Pt apparently is being noncompliant [with]
med regime. She isn't sure what pills she takes or what for" (R. 321). The plaintiff
returned with her medication the following week, at which time her only diagnosis
was hypertension (R. 325-326). A visit in February 2009 reflects that the plaintiff had
no complaints of back pain at that time, but did have an earache (R. 327). Under

"Chronic Problems" were listed obesity, benign hypertension and anemia (R. 327).

Her lifestyle was noted to include moderate activity, including walking for exercise

(R. 328). Further notes reflect that the plaintiff had recently traveled to South Carolina

(R. 328).

Having considered all of the medical evidence submitted and the evidence

adduced at each of the three hearings, the court can find no basis on which to hold that

the decision of the ALJ is against the substantial weight of the evidence. No evidence

supports Dr. Quilon's one line finding of disability on a form intended to allow her

patient to receive food stamps. Rather, the medical records themselves show that the

plaintiff was hospitalized one time in January 2006 and never attempted to work after

that. No evidence in the medical records supports a finding that the plaintiff is unable

to perform any substantial gainful employment.

## Conclusion

Where the Commissioner's decision is supported by substantial evidence, the

Court must affirm, even if the reviewer would have reached a contrary result as finder

of fact, and even if the reviewer finds that the evidence preponderates against the

Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n. 3 (11th Cir.1991);

*Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th  Cir.1991)(citing *Bloodsworth v.*

*Heckler*, 703 F.2d 1233, 1239 (11th Cir.1983)).   Because this is the extent of this

court's inquiry, the decision of the ALJ shall be affirmed by separate order.

      **DONE** and **ORDERED** this 4th day of May, 2010.


                          INGE PRYTZ JOHNSON
                          U.S. DISTRICT JUDGE